UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DALE W. EVANS,<br>   Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 1:20-CV-453-JPK |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of<br>Social Security,<br>   Defendant. | )<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], and Plaintiff's Opening Brief [DE 17], requesting that the December 24, 2019 decision of the Administrative Law Judge (ALJ) denying his claim for disability insurance benefits be reversed and remanded for further proceedings. For the following reasons, the Court grants Plaintiff's request.

## PROCEDURAL BACKGROUND

On May 15, 2018, Plaintiff Dale W. Evans filed applications for disability insurance benefits and supplemental security income, alleging disability beginning March 11, 2018. Plaintiff's application was denied initially and on reconsideration. (AR 113-120, 125-130).[1] Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on December 2, 2019. (AR 37-73). On December 24, 2019, the ALJ issued an unfavorable decision, making the following findings:[2]

  1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

2. The claimant has not engaged in substantial gainful activity since March 11, 2018, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine status post surgeries, sinus bradycardia, obesity, post-traumatic stress disorder ("PTSD"), and adjustment disorder with anxiety.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. … [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can occasionally climb stairs or ramps, balance, stoop, kneel, crouch, or crawl; and can never climb ladders, ropes, or scaffolds. Must avoid concentrated exposure to wetness, vibration, wet or slippery surfaces, and must avoid even moderate exposure to unprotected heights and moving machinery. Work with a moderate level of noise. Work with an option to sit or stand, changing positions no more frequently than every 30 minutes, while remaining on task. With work that can be learned in 30 days, or less, with simple routine tasks; routine work place changes; simple work related decisions; is able to remain on task in two-hour increments.

6. The claimant is unable to perform any past relevant work.

7. The claimant . . . was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

(AR 15-26).

Plaintiff appealed, but the Appeals Council denied review. (AR 1-3). Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

**DISABILITY STANDARD**

To be eligible for benefits, a claimant must establish that he suffers from a "disability," defined as an inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether he is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether he is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

**ANALYSIS**

Plaintiff asserts three arguments for reversal of the ALJ's decision: that the ALJ failed to properly assess Listing 1.04 ("Disorders of the spine"), failed to properly account for his

4

impairments in the RFC, and wrongly discredited his subjective complaints. The Court finds that the ALJ's analysis of Listing 1.04 requires remand.

I.      **Listing 1.04**

Plaintiff, a former machinist and mechanical engineer, alleges he has had four back surgeries between 2001 and 2019. (AR 42-46, 49, 57). In this record, the medical evidence of his back impairments begins in March 2018, when he left his last job. (AR 51). At that point, he was diagnosed with a list of back ailments including lumbar radiculopathy, lumbar facet arthropathy, sacroiliitis, occipital neuralgia, chronic pain syndrome, and cervical spine stenosis. (AR 305-06). He reported lower back pain that radiated to his legs and interfered with sleep. (AR 305). Between May and July 2018, he received a series of medial branch blocks and other injections, which had uneven results – sometimes giving him as little as 20% relief, sometimes 100%. (*See*, *e.g.*, AR 301, 474, 482, 485). On July 16, 2018, state agency consultant Dr. M. Brill reviewed his records and found that his back impairments were non-severe because they would resolve soon: "[E]ven though claimant experiences pain with extension/flexion, gait and station are normal. Normal healing process and shouldn't persist after 12mo." (AR 79-81). This finding was affirmed on reconsideration by Dr. B. Whitley on November 8, 2018. (AR 107-110).

Between July 2018 and May 2019, there is no record of Plaintiff seeking treatment for back issues specifically. However, in May 2019, he returned to his pain management doctor reporting continuous, severe pain in his lower back and legs. (AR 729-730). The doctor refilled previous prescriptions for pain medications and referred him to Dr. Ian White for surgical evaluation. (AR 730). In June 2019, Dr. White reported that Plaintiff had been "fused very flat," had developed lower extremity weakness, "and is now falling over his own spine." (AR 726). He had developed pseudoarthritis and "severe" foraminal stenosis. The doctor found that he had "failed" the

treatments of bracing and injections, and recommended surgery. (AR 726-27). Plaintiff underwent surgery on August 29, 2019. (AR 708-712).

After the surgery, there is another gap in the record; there are no further records of back treatment until the December 2, 2019 hearing. However, Plaintiff testified at the hearing that he was "still hurting quite a bit." (AR 52). He was taking medications and would "probably" start injections in January. (AR 53). The doctor had also told him it was "time to start slowing down," because his back would likely get worse rather than better. (AR 50, 64).

The ALJ found that Plaintiff's back issues were severe impairments, but did not meet or medically equal the criteria for Listing 1.04 ("Disorders of the spine"). (AR 17-18). Plaintiff objects to the listing analysis. An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). In order "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that manifests only some of the criteria will not qualify, no matter its severity. *Id*. When evaluating whether an impairment is presumptively disabling under a listing, the ALJ "must discuss the listing by name and offer more than a perfunctory analysis." *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020).

A claimant was[3] presumed disabled under Listing 1.04 if they met the following criteria:

> 1.04 Disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
> *With*:

---

[3] The agency has since revised the medical criteria for evaluating the musculoskeletal impairment listings, effective April 2, 2021. *See Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 FR 78164, 2020 WL 7056412 (December 3, 2020).

6

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); *or*
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; *or*
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00(B)(2)(b).

20 C.F.R. pt. 404, subpt. P, App'x 1, § 1.04 (emphasis added). In short, a claimant meets Listing 1.04 if they have a spine disorder that compromises a nerve root or the spinal cord, and they meet every requirement of Paragraph A, B, or C.

The ALJ provided the following analysis of the listing:

> The claimant does not meet listing 1.04 for disorders of the spine. The evidence does not show that the claimant has compromise of a nerve root or the spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. Specifically, treatment notes do not indicate the need to change position or posture more than once every two hours or document muscle atrophy.

(AR 18).

Although not included in the discussion of the listing, the ALJ further analyzed Plaintiff's back impairments in the context of the RFC.[4] The ALJ gave no "specific evidentiary weight" to any medical opinion, and explicitly found that the agency doctors were "not persuasive" because they had not been able to review new evidence of Plaintiff's impairments, including his 2019 back treatments. (AR 24). The ALJ found that Plaintiff's "statements about the intensity, persistence,

---

[4] The Court considers these findings in evaluating the analysis of Listing 1.04. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("To require the ALJ to repeat such a discussion throughout his decision would be redundant.").

and limiting effects of his symptoms [were] inconsistent because they are not supported by the objective medical evidence." (AR 22). The ALJ pointed to the fact that he did not always use assistive device for walking, despite claiming that he needed one. (AR 22-23). The ALJ also cited to various records between April 2018 and May 2019 in which he did not report back pain, received relief from injections, or was observed to have a full range of motion. (*Id*. citing, *e.g.*, AR 437, 644, 802). As for the August 2019 surgery, the ALJ specifically found: "There is little objective evidence to indicate this surgery was not a complete success, as there are no office visit notes after this even though the surgery was three months before the hearing." (AR 23).

However, these findings did not clarify the ALJ's analysis of the listing, which was cursory and seemed to conflate the requirements of the various paragraphs. The ALJ stated that "the evidence does not show" Plaintiff had a qualifying spine disorder with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication – in other words, he did not meet the baseline requirements of Paragraphs A, B, or C. The explanation for that finding was: "Specifically, treatment notes do not indicate the need to change position or posture more than once every two hours or document muscle atrophy." (AR 19). However, the requirement for position changes every two hours appears only in Paragraph B. *See* 20 C.F.R. pt. 404, subpt. P, App'x 1, § 1.04. There was no explanation of the conclusions as to Paragraphs A and C. Stating that the evidence "fails to establish" the Paragraph A or C criteria, without explaining why, is "the very type of perfunctory analysis [the Seventh Circuit has] repeatedly found inadequate." *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (an ALJ's statement that the evidence "does not establish" the criteria for the listing was inadequate) (listing cases).

The ALJ's decision could still stand if the rest of the decision adequately supported the cursory analysis of the listing. *Jeske*, 955 F.3d at 589-591. But the rest of the decision does not

8

provide a good explanation, and in fact, casts doubt on even the limited Paragraph B analysis. Although the ALJ stated Plaintiff would not need to change position every two hours, that finding seems to be undermined by the RFC itself, which limited Plaintiff to "[w]ork with an option to sit or stand, *changing positions no more frequently than every 30 minutes*." (AR 18, 20 (emphasis added)). The other Paragraph B criteria seem to be present: Plaintiff needed to have "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia[5]." A June 2019 MRI revealed spinal arachnoiditis (AR 578-579), which the ALJ acknowledged in the decision (AR 22).[6] The surgeon's analysis and the pain management doctor's notes suggested this condition caused some form of dysthesia. (*See* AR 726-27, 729-730). Even accepting the ALJ's conclusion that some of Plaintiff's complaints were exaggerated, the ALJ still "[gave] deference to [Plaintiff's] assertions about back pain" (AR 24-25), so that does not explain why Plaintiff did not satisfy Paragraph B. Perhaps the ALJ assumed the arachnoiditis was not what was causing him discomfort, but that is not explained in the decision and there is no medical opinion supporting such an inference. At the very least, the MRI showing arachnoiditis was "new and potentially decisive medical evidence," which should have been submitted to a medical opinion. *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021); *see also Goins v. Colvin*, 764 F.3d 677,

---

[5] "Dysesthesia is a generic term for a cutaneous symptom--such as pruritus, burning, tingling, stinging, anesthesia, hypoesthesia, tickling, crawling, cold sensation . . . that is often caused by nerve trauma, impingement, or irritation." *See Neurocutaneous disease: Neurocutaneous dysesthesias*, https://pubmed.ncbi.nlm.nih.gov/26775772/ (last visited August 26, 2022).

[6] The Commissioner argues that the reference to arachnoiditis in the June 2019 MRI was insufficient, because "the 'suggestion' of arachnoiditis is not enough," and a subsequent CT scan did not show arachnoiditis. (Resp. Br. 6). But the ALJ did not rely on this reasoning, and directly stated: "Medical imaging from June 2019 showed arachnoiditis." (AR 22); *see Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("[T]he Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace . . . On appeal, the Commissioner may not generate a novel basis for the ALJ's determination.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)).

680 (7th Cir. 2014) ("Fatally, [the ALJ] failed to submit [the claimant's updated] MRI to medical scrutiny.").

The ALJ referred to the "lack of information provided on the claimant's status post surgery" (AR 24), stating that because there were no office notes in the record following the August 2019 surgery, there was "little objective evidence to indicate this surgery was not a complete success." (AR 23). To the extent intended as a justification for the Listing 1.04 findings, it is not proper.

When the lack of documented treatment is a basis for finding a claimant's symptoms inconsistent with the evidence, the ALJ must "consider possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. [The ALJ] may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." SSR 16-3p, 2016 WL 1119029 at *8 (Mar. 16, 2016); *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)).

In this case, the ALJ did question Plaintiff and Plaintiff referenced on multiple occasions that his treatment was continuing after surgery. (*See* AR 50 (Plaintiff decided to stop driving, based on "experience, and then after the surgery, talking to the doctor"); 52-53 (Plaintiff's pain management doctor delayed a course of injections because "[t]hey're waiting for everything to settle down, swelling to go down and all that")). Later, questioned by his attorney, he testified:

> [Attorney]: Is there anything else you want the judge to know, that we haven't discussed, that you feel is important?

> [Plaintiff]: Just that I'm not going to get better. And the doctor that I'm seeing now, Dr. White, that did my surgery, says they have to go farther up my spine now, because I'm starting to have troubles up there. He said, things aren't going to get better. It's going to get worse. It's time for me to slow down, start reevaluating my lifestyle.

(AR 64). Even without this testimony, it would be curious to infer that a person with three prior back surgeries would undergo a fourth surgery and immediately stop seeking care because it was a complete success. Despite testimony indicating that Plaintiff's treatment was ongoing, the ALJ never asked Plaintiff or his counsel about the "missing" records[7] or why he had not sought further treatment. In fact, the ALJ concluded the hearing by commenting: "Since [the] attorney's done such a great job of getting all your medical evidence in the record, the next step is, a decision will be issued." (AR 72). On this record, it cannot be said that the ALJ properly "explored" the reasons for the alleged lack of treatment. *Moss*, 555 F.3d at 562.

## II.     Remaining Arguments for Remand

Because the case is remanded on other grounds, the Court does not attempt to resolve all of Plaintiff's arguments regarding flaws in the RFC, but one issue bears clarification. The ALJ did not address Plaintiff's diagnosis of chronic pain syndrome (*see, e.g.*, AR 289), or make any findings regarding his allegations of migraines. These were not listed among the ALJ's lists of severe (AR 17) and non-severe (AR 18) impairments. On remand, the ALJ is reminded of the need to account for all impairments in the RFC analysis. 20 C.F.R. § 404.1545 ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," when we assess your residual functional

---

[7] At the beginning of the hearing, the ALJ did ask Plaintiff's counsel whether he considered the record "complete," and counsel replied "I do." (AR 40). The Court does not believe this general inquiry satisfies the ALJ's obligation to "explore" the reasons for the apparent lack of treatment, particularly given Plaintiff's testimony suggesting his treatment was ongoing.

capacity."). If the ALJ finds that Plaintiff's alleged limitations from a medically documented impairment are not supported, the ALJ needs to specifically explain why. A general statement that a person's symptoms are not consistent with the evidence is not sufficient for this purpose. *See* SSR 16-3p, 2016 WL 1119029 at *8 (ALJ must "*explain which of an individual's symptoms* [they] found consistent or inconsistent with the evidence") (emphasis added); *see also Borum v. Saul*, No. 2:18-CV-185-JEM, 2019 WL 3369714, at *3 (N.D. Ind. July 25, 2019) ("To the extent the ALJ relied on [general] conclusions about Plaintiff's inconsistencies to ignore her allegations of headaches in crafting the RFC, her explanation for doing so was inadequate.").

### III. Listing Criteria on Remand

Plaintiff argues that, on remand, the ALJ should continue to evaluate his claims under Listing 1.04, the listing in effect during the prior agency proceedings. As noted above, the agency revised the medical criteria for evaluating back disorders, effective April 2, 2021. The agency regulations state: "If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these [new] rules to the entire period at issue in the decision we make after the court's remand." Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 FR 78164 n. 2, 2020 WL 7056412 (December 3, 2020). By that standard, it appears Listing 1.04 should not apply on remand, but Plaintiff argues that the law forbids the "retroactive" imposition of the new listing criteria on his disability claim. (Pl. Br. 18).

For the reasons described below, the Court will deny Plaintiff's request to order the agency to apply the prior criteria. *See, e.g.*, *Toth v. Berryhill*, No. 1:17-CV-00516-SLC, 2019 WL 140786, at *7 n. 6 (N.D. Ind. Jan. 8, 2019) (facing a similar request, the Court "decline[d] to order the Commissioner" to apply the prior criteria). However, because this issue may turn on whether a

retroactive application creates a "manifest injustice" in that particular case, *see infra*, this ruling does not necessarily foreclose any future argument on this point by Plaintiff. If the agency concludes on remand that the difference in the criteria would not affect the result, the agency may wish to clarify that to avoid unnecessary re-litigation of this question.

In general, agencies cannot "promulgate retroactive rules unless that power is conveyed by Congress in express terms," and the Social Security Act does not directly convey that power to the agency. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 42 U.S.C. § 405. A law is retroactive if it "attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates 'retroactively' . . . [depends on] the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 270 (1994). Relevant considerations include whether the affected person had "fair notice [of the change], reasonable reliance and settled expectations" based on the old law. *Id*. In the context of agency adjudication, "[a] retrospective application can properly be withheld when to apply the new rule to past conduct or prior events would work a manifest injustice." *Velasquez-Garcia v. Holder*, 760 F.3d 571, 581 (7th Cir. 2014) (quoting *Clark–Cowlitz Joint Op. Agency v. FERC*, 826 F.2d 1074, 1081 (D.C. Cir. 1987) (en banc)).

Some courts examining this issue in the social security context have held that changes to listing criteria are not "retroactive" as defined in *Landgraf*. For example, in *Combs v. Commissioner of Social Security*, the Sixth Circuit Court of Appeals explained that disability claimants have no reliance interest in listing criteria: they do not develop impairments or assert disability claims because of agency procedures, and they have no settled expectation that the procedures will always be the same. 459 F.3d 640, 646 (6th Cir. 2006) (en banc). The court held

that the application of a revised listing to claims filed before the revision was not impermissibly retroactive. *Id*. at 650; *see also Adkins v. Comm'r of Soc. Sec.*, No. 6:18-CV-1958-ORL-PDB, 2020 WL 1332003, at *3 (M.D. Fla. Mar. 23, 2020); *Ray v. Comm'r of Soc. Sec.*, No. CIV-18-00638-SM, 2019 WL 1474007, at *2-3 (W.D. Okla. Apr. 3, 2019); *but see, e.g., Cox v. Kijakazi*, No. 18-CV-2389-FYP-GMH, 2022 WL 178953, at *6-8 (D.D.C. Jan. 19, 2022) (finding that application of a revised listing was unlawfully retroactive, noting that this "remains an unsettled question" in many circuits).

The Seventh Circuit has not squarely addressed this issue. However, in an unpublished decision, *Barthelemy v. Barnhart*, it acknowledged that the agency can change its disability evaluation procedures retroactively. 107 F. App'x 689, 693 (7th Cir. 2004) ("The new regulations apply retroactively to all disability claims filed before the effective date, including those awaiting initial determination or pending judicial appeal.") (discussing SSR 00-3p, a regulation describing how to evaluate obesity). As noted above, at least one other court in this district has declined a claimant's request to be evaluated under old listing criteria. *Toth*, 2019 WL 140786, at *7 n. 6 (citing *Barthelemy*). The Court is persuaded by the reasoning in *Combs* and *Toth* and is not aware of any contrary holding within this circuit.

Even if this was a "retroactive" change, the Court does not necessarily believe it would create a "manifest injustice" for Plaintiff. The listing criteria exist to "streamline[] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Combs*, 459 F.3d at 649 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)). Although the listing criteria have changed, the fundamental criteria for disability – inability to engage in substantial gainful activity because of an impairment that is expected to last for a continuous period of twelve months, 42 U.S.C. §

423(d)(1)(A) – have not changed. If Plaintiff meets those criteria, he should ultimately be found disabled, whether at step three or step five.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** the relief sought in Plaintiff's Opening Brief [DE 17] and **REMANDS** the decision of the Commissioner of the Social Security Administration. The Court **DENIES** Plaintiff's request for an order directing that he be evaluated under Listing 1.04. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 26th day of August, 2022.

s/ Joshua P. Kolar  
MAGISTRATE JUDGE JOSHUA P. KOLAR  
UNITED STATES DISTRICT COURT